# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

JOSE FERNANDO JUAREZ VELASQUEZ,

*Petitioner-Appellee*,

*v.*

JOSE D. GARCIA, IN HIS OFFICIAL CAPACITY AS FIELD OFFICE DIRECTOR, EL PASO FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID EASTERWOOD, IN HIS OFFICIAL CAPACITY AS FIELD OFFICE DIRECTOR, ST. PAUL FIELD OFFICE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID J. VENTURELLA, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD BLANCHE, IN HIS OFFICIAL CAPACITY AS ACTING ATTORNEY GENERAL OF THE UNITED STATES,

*Respondents-Appellants*.

On Appeal from the United States District Court
for the District of Minnesota, No. 0:26-cv-00597-DSD
Before the Honorable David S. Doty

## APPELLEE'S RESPONSE BRIEF

LYNDSEY MARCELINO SCHALKWYK
JI HAE KIM
MARCELINO & KIM PC
400 South 4th Street, Suite 410
PMB 504349
Minneapolis, MN 55415
(858) 337-0956

KEVIN M. LAMB
JOSEPH M. MEYER
MATTHEW E. MORRIS
ANDREW NELL
JANE E. RECKER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

July 13, 2026

Petitioner Jose Fernando Juarez Velasquez was arrested by immigration officials in Minnesota and detained in at least three states over the next several weeks. He filed a habeas petition in the District of Minnesota. The district court granted the writ, and the government has since released Velasquez on bond pursuant to the final order of an immigration judge.

The government argues that the District of Minnesota was not a proper venue because Velasquez was not confined there when his petition was filed. But because the government has complied with the district court's order and Velasquez is out on bond, this Court cannot grant the government effectual relief, rendering this appeal moot. In any event, although jurisdiction generally lies in the district of confinement, the district court properly exercised jurisdiction given that the government (1) prevented the district court from ascertaining Velasquez's district of confinement and (2) manipulated Velasquez's location to impede habeas relief. If this Court concludes the district-of-confinement rule applies, the case should be transferred to the District of New Mexico, where Velasquez appears to have been confined when his petition was filed.

Oral argument is unnecessary because this appeal is manifestly moot, but petitioner's counsel stands ready to present oral argument if it would assist the Court on any issues in the appeal.

**TABLE OF CONTENTS**

Page

SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT.................................................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT .............................................................3

STATEMENT OF ISSUES .........................................................................3

STATEMENT OF THE CASE.....................................................................4

SUMMARY OF ARGUMENT ...................................................................8

STANDARD OF REVIEW .......................................................................10

ARGUMENT .............................................................................................11

I. THIS APPEAL IS MOOT .............................................................11

II. THE DISTRICT COURT PROPERLY EXERCISED JURISDICTION OVER VELASQUEZ'S HABEAS PETITION .........................................15

    A. The District-Of-Confinement Default Rule Is Not Absolute..............16

    B. The District-Of-Confinement Default Rule Does Not Apply Because The Government's Conduct Impeded The District Court's Ascertainment Of That District................................................17

    C. The District-Of-Confinement Default Rule Does Not Apply Because The Government Manipulated Velasquez's Location To Impede His Access To Habeas Relief .........................................22

III. IF THE DISTRICT OF MINNESOTA WAS AN IMPROPER VENUE, THE CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW MEXICO ....................31

CONCLUSION..........................................................................................35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## CASES

Page(s)

*AARP v. Trump*,
605 U.S. 91 (2025).................................................................28

*Abdala v. INS*,
488 F.3d 1061 (9th Cir. 2007) ...........................................9, 13

*Adriana M.Y.M. v. Easterwood*,
2026 WL 184721 (D. Minn. Jan. 24, 2026) .................................30

*Advocates for Human Rights v. DHS*,
820 F. Supp. 3d 789 (D. Minn. 2026) ....................................26, 27

*Ali v. Cangemi*,
419 F.3d 722 (8th Cir. 2005) ......................................................14

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013).................................................................11

*Anariba v. Director Hudson County Correctional Center*,
17 F.4th 434 (3d Cir. 2021) .....................................................24

*Avila v. Bondi*,
170 F.4th 1128 (8th Cir. 2026) ....................................................8

*Barco Mercado v. Francis*,
811 F. Supp. 3d 487 (S.D.N.Y. 2025) ............................................13

*Barney v. United States*,
568 F.2d 116 (8th Cir. 1978) ...............................................3, 9, 11

*Braden v. 30th Judicial Circuit Court of Kentucky*,
410 U.S. 484 (1973)............................................................16, 17

*Carlos D. v. Bondi*,
2026 WL 636685 (D. Minn. Mar. 6, 2026)............................21, 33

*Chafin v. Chafin*,
568 U.S. 165 (2013)..................................................................2

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992)..............................................................................3, 11, 15

*Clark v. Baka*,
593 F.3d 712 (8th Cir. 2010) ...................................................................11

*Demjanjuk v. Meese*,
784 F.2d 1114 (D.C. Cir. 1986)...........................................................17, 18

*Diaz v. United States*,
580 F. App'x 716 (11th Cir. 2014)..........................................................32

*Egbele v. Bondi*,
2026 WL 458242 (D. Minn. Feb. 18, 2026)..........................................21, 33

*Fernando T. v. Noem*,
821 F. Supp. 3d 975 (D. Minn. 2026) .......................................................25

*Genesis HealthCare Corporation v. Symczyk*,
569 U.S. 66 (2013)...................................................................................14

*Gherebi v. Bush*,
374 F.3d 727 (9th Cir. 2004) ................................................................4, 32

*Goldlawr, Inc. v. Heiman*,
369 U.S. 463 (1962).................................................................................34

*Haden v. Pelofsky*,
212 F.3d 466 (8th Cir. 2000) ....................................................................14

*Harris v. City of Philadelphia*,
47 F.3d 1311 (3d Cir. 1995) .................................................................11, 12

*Harris v. Nelson*,
394 U.S. 286 (1969)..........................................................................16, 17, 35

*Hensley v. Municipal Court, San Jose Milpitas Judicial District*,
*Santa Clara County*, 411 U.S. 345 (1973) ....................................................16

*Holman v. Kemna*,
212 F.3d 413 (8th Cir. 2000) ....................................................................10

*In re Search Warrants*,
487 F.3d 1190 (8th Cir. 2007) ...........................................................14

*Johnson v. City of Minneapolis*,
901 F.3d 963 (8th Cir. 2018) ............................................................29

*Jones v. Norman*,
633 F.3d 661 (8th Cir. 2011) ......................................................10, 19

*Juan T.R. v. Noem*,
2026 WL 555601 (D. Minn. Feb. 26, 2026)............................25, 26

*Khalil v. President, United States*,
164 F.4th 259 (3d Cir. 2026) ...........................................................27

*Kumar v. Soto*,
822 F. Supp. 3d 450 (D.N.J. 2026) ..................................................27

*Marcia R.Q. v. Bondi*,
2026 WL 296502 (D. Minn. Feb. 4, 2026)......................................32

*Melchor-Rios v. Ortiz*,
2025 WL 3764775 (D.N.M. Dec. 30, 2025) ...................................32

*Munaf v. Geren*,
553 U.S. 674 (2008)..........................................................................16

*Newman v. Alabama*,
683 F.2d 1312 (11th Cir. 1982) .......................................................12

*Olivera v. Dedos*,
2026 WL 622669 (D.N.M. Mar. 5, 2026) .......................................32

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ....................................................18, 27

*Panosyan v. Mayorkas,*
854 F. App'x 787 (9th Cir. 2021).............................................3, 9, 13

*Preiser v. Newkirk*,
422 U.S. 395 (1975)......................................................................9, 14

*Riley v. INS*,
310 F.3d 1253 (10th Cir. 2002) ........................................................3, 9, 13

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004)...............................................................................*passim*

*Shaw v. United States*,
417 F. App'x 311 (4th Cir. 2011) ................................................................32

*Singh v. Bondi*,
2026 WL 525094 (D.N.M. Feb. 25, 2026)..............................................32, 33

*Singh v. Carnes*,
2026 WL 599138 (D.N.M. Mar. 3, 2026) .....................................................32

*Suri v. Trump*,
2025 WL 1806692 (4th Cir. July 1, 2025) .................. 3, 22, 23, 27, 28, 29, 31

*United States v. Cooper*,
990 F.3d 576 (8th Cir. 2021) .......................................................................34

*United States v. Evans*,
690 F.3d 940 (8th Cir. 2012) .......................................................................11

*United States v. First National Bank of Sturgis*,
587 F.2d 909 (8th Cir. 1978) .................................................................11, 12

*United States v. Olson*,
604 F.2d 29 (8th Cir. 1979) .........................................................................11

*Vasquez v. Reno*,
233 F.3d 688 (1st Cir. 2000).......................................................................22

*Wales v. Whitney*,
114 U.S. 564 (1885).....................................................................................16

*Wolff v. McDonnell*,
418 U.S. 539 (1974)...............................................................................18, 21

## DOCKETED CASES

*Hoque v. Trump*,
No. 25-2516 (8th Cir.) ...................................................................2, 9, 14, 15

*Lida E.G.Q. v. Bondi*,
No. 26-cv-138 (D. Minn.)............................................................26

*Manolo Z. L. v. Trump*,
No. 26-cv-316 (D. Minn.)............................................................26

**STATUTES AND RULES**

Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*......................................2

8 U.S.C.
§ 1225 ............................................................................................6, 8
§ 1226 ............................................................................................6, 7, 8

28 U.S.C.
§ 1291 ..............................................................................................3
§ 1331 ..............................................................................................3
§ 1651 ..............................................................................................3
§ 1406 ................................................................................10, 32, 34
§ 2241 ..................................................................................3, 16, 33
§ 2242 ......................................................................................3, 16
§ 2253 ..............................................................................................3

Fed. R. Civ. P. 12 ................................................................................34

**OTHER AUTHORITIES**

Burke, Garance, et al., *Takeaways From AP's Report On The ICE
Detention Center Holding Children And Parents*, Associated
Press (Feb. 28, 2026), https://apnews.com/article/children-
immigration-detention-dilley-trump-administration-ice-
400c9dbe9c483f399a0a7bd97db95fe5.......................................30

Findell, Elizabeth & Michelle Hackman, *How ICE's Largest
Detention Facility Unraveled*, Wall St. J. (Mar. 13, 2026),
https://www.wsj.com/us-news/how-ices-largest-detention-
facility-unraveled-faa8d264.......................................................30

Halliday, Paul D., *Habeas Corpus: From England to Empire* (2012 ed.) ..............18

ICE, *El Paso Field Office*, https://www.ice.gov/field-office/el-paso-
field-office (visited July 6, 2026) .............................................33

Nguyen, Alex & Dan Keemahill, *147 Measles Cases Reported In Texas So Far This Year, Most Of Them In Federal Detention Centers*, San Antonio Current (Mar. 19, 2026), https://www.sacurrent.com/news/texas-news/147-measles-cases-reported-in-texas-so-far-this-year-most-of-them-in-federal-detention-centers ...............................................................................30

Talbot, Ruth, et al., *Tracking Habeas Cases*, ProPublica (June 30, 2026), https://projects.propublica.org/habeas-tracker ...................................31

United States District Court District of Minnesota, *Judges*, https://www.mnd.uscourts.gov/judges (visited July 6, 2026) .......................31

United States District Court Western District of Texas, *Judges' Directory & Biographies* https://www.txwd.uscourts.gov/judges-information/judges-directory-biographies (visited July 6, 2026)...................................................31

# INTRODUCTION

In January, immigration officials arrested Jose Fernando Juarez Velasquez in Minnesota and shuttled him between at least three states over the next several weeks. Even the government's attorneys could not keep up with Velasquez's whereabouts: After Velasquez's counsel filed a habeas petition in the District of Minnesota, the government insisted that Velasquez was detained in—and thus should have filed his habeas petition in—the Southern District of Texas. But as far as the record reveals, Velasquez never entered that district.

Faced with confusion about Velasquez's location, the district court exercised jurisdiction and granted the writ. According to the government, that decision must be reversed. The government contends that Velasquez was required to file his petition in his "district of confinement," *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), and that the district court should have transferred the case there—never mind that the government misreported Velasquez's district of confinement to the district court and, on appeal, conspicuously declines to name the jurisdiction where it believes Velasquez should have sought relief.

The Court need not reach the government's venue contention because this appeal is moot. Upon granting Velasquez's habeas petition, the district court required the government to return Velasquez to Minnesota and afford him a hearing before an immigration judge ("IJ"). The government has done that. And

- 1 -

after the government noticed this appeal, an IJ ordered Velasquez released on bond—an order that has since become final because the government declined to appeal it. As a result, regardless of what happens in this appeal, the government's ability to re-detain Velasquez is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and its implementing regulations, not the district court's order. This Court thus cannot grant the government "effectual relief," rendering the case moot. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Indeed, the government has moved to dismiss its appeal before this Court in *Hoque v. Trump*, No. 25-2516 (8th Cir.), on the same ground—that an intervening final IJ decision releasing a petitioner on bond renders the case moot.

If the Court nevertheless reaches the venue issue, it should affirm. The district-of-confinement rule does not apply when the government has either (1) impeded a court's ascertainment of the district of confinement or (2) transferred a detainee in order to manipulate habeas jurisdiction and thwart judicial review. *See Padilla*, 542 U.S. at 441, 450 n.18; *id.* at 452 (Kennedy, J., concurring). Both exceptions apply here, and either suffices to support affirmance. This case illustrates the wisdom of these exceptions: When the government's actions render its own lawyers unable to determine the proper venue for a habeas petition, more should not be demanded of the petitioner or the district court.

Finally, if the Court concludes that venue was improper, it should order the case transferred to the District of New Mexico.  That appears to be where Velasquez was confined when he sought judicial relief—not the Southern District of Texas, as the government argued below.

**JURISDICTIONAL STATEMENT**

The district court properly exercised jurisdiction pursuant to 28 U.S.C. §§ 1331, 1651, and 2241.  The district court entered final judgment on January 28, 2026, App.  43, R. Doc. 9 at 1, and the government timely filed a notice of appeal on January 30, 2026, App. 47, R. Doc. 10.  This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253.

**STATEMENT OF ISSUES**

1.      Whether this case is moot.  The most apposite authorities are *Church of Scientology of California v. United States*, 506 U.S. 9 (1992); *Barney v. United States*, 568 F.2d 116 (8th Cir. 1978) (per curiam); *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002); and *Panosyan v. Mayorkas*, 854 F. App'x 787 (9th Cir. 2021).

2.      Whether the district court properly exercised jurisdiction over the petition.  The most apposite authorities are *Rumsfeld v. Padilla*, 542 U.S. 426 (2004); *Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025); and 28 U.S.C. §§ 2241, 2242.

3.      If the District of Minnesota was not a proper venue, whether this case should be transferred to the District of New Mexico.  The most apposite authorities are *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), and *Gherebi v. Bush*, 374 F.3d 727 (9th Cir. 2004).

### STATEMENT OF THE CASE

Velasquez is a Guatemalan citizen who entered the United States in October 2023.  App. 43, R. Doc. 9 at 1.  Since then, he has lived in Minnesota with his wife and three children while awaiting resolution of his pending asylum claim.  *Id.*; App. 2, R. Doc. 1 ¶ 3.  He has no known criminal history, possesses a valid work permit, and has complied with all orders regarding his immigration status since entering the country.  App. 2, R. Doc. 1 ¶¶ 1-3.

On January 6, 2026, immigration officers arrested Velasquez outside his home.  App. 2, R. Doc. 1 ¶ 4; App. 44, R. Doc. 9 at 2.  The government appears to have been confused about Velasquez's identity.  Immigration officials repeatedly referred to him as Jose Juares Miljango.  App. 3, R. Doc. 1 ¶ 6.  And when processing Velasquez for detention, the government presented him with documents describing him as a 173-pound man from El Salvador even though he is a 103-pound man from Guatemala.  *Id.*

Velasquez's counsel learned of his arrest the next day.  App. 3, R. Doc. 1 ¶ 7.  She immediately sought to contact him but was unsuccessful.  App. 3, R. Doc.

¶ 8. Velasquez was not listed in the ICE Locator online database, and although Velasquez's counsel assumed he was detained in Minnesota, she was unable to locate him. *Id.*

By that time or soon thereafter, the government had transferred Velasquez from Minnesota to the Fort Bliss detention center in El Paso, Texas. App. 3, R. Doc. 1 ¶ 9. Velasquez was not allowed a phone call in advance of his transfer, so he first contacted his wife from El Paso on January 8. *Id.* Upon learning of Velasquez's location, his counsel immediately requested a call with him, which the government scheduled for January 12. *Id.* But shortly before the call was set to occur, the government informed Velasquez's counsel that it was canceling the call. *Id.*

The government provided no explanation for why it canceled the call, but Velasquez's counsel later learned that she had been unable to speak with Velasquez at Fort Bliss because he was no longer there on January 12. At some point—it remains unclear when—the government had transferred him to a detention center in Torrance County, New Mexico. App. 3, R. Doc. 1 ¶ 9. The government did not notify Velasquez's counsel before doing so, just as it had not provided notice before transferring Velasquez from Minnesota to Texas. *Id.* Velasquez finally spoke to his counsel on January 20, two weeks after his arrest. App. 4, R. Doc. 1 ¶ 10.

On January 23, Velasquez filed a petition for a writ of habeas corpus in the District of Minnesota.  App. 1-19, R. Doc. 1.  Among the named respondents were Jose D. Garcia, Field Office Director for the El Paso Field Office of U.S. Immigration and Customs Enforcement ("ICE"), and David Easterwood, Field Office Director for the St. Paul Field Office of ICE.  App. 5, R. Doc. 1 ¶¶ 16-17. Velasquez's petition alleged, among other things, that his detention was governed by 8 U.S.C. § 1226(a), a provision governing the detention of certain noncitizens that allows for release on bond, rather than by § 1225(b)(2)(A), a provision the government invoked that does not allow for bond.  App. 12, R. Doc. 1 ¶¶ 47-51.

After Velasquez filed his petition, the district court enjoined the government from removing Velasquez from Minnesota and ordered it to "immediately return" Velasquez if he had already been removed.  App. 21-22, R. Doc. 5 at 2-3.

The government responded that Velasquez had filed his petition "in the wrong place."  App. 23, R. Doc. 7 at 1.  On its telling, Velasquez was "detained in Texas" and had been for "weeks."  *Id.*  Thus, the government reasoned, the rule that habeas jurisdiction lies in "the district of confinement" required the district court to dismiss or transfer Velasquez's petition "to the Southern District of Texas."  App. 27, R. Doc. 7 at 5.  That district was proper, the government argued, because it was "the district in which the Port Isabel Service Processing Center is located."  *Id.*

In Velasquez's reply, he asserted that, to his counsel's knowledge, he was in New Mexico, not Texas. App. 34-35, R. Doc. 8 at 4-5. He argued that the government's own inability to determine "where [he was located] at any particular point" raised the question of "how his own attorneys can make that determination so as to file in the venue [the government] deem[s] proper." App. 35, R. Doc. 8 at 5. He also argued that his transfer out of Minnesota "before he was able to file his habeas petition" did not "divest th[e] Court of jurisdiction" because "the transfer frustrated [his] ability to contact and communicate with his counsel." App. 34, R. Doc. 8 at 4. The government, Velasquez contended, was engaging in "forum-shopping" by "transport[ing] detained immigrants outside the State of Minnesota" as quickly as possible. App. 37, R. Doc. 8 at 7.

The district court granted Velasquez's petition. App. 43, R. Doc. 9 at 1. Observing that there was "confusion as to where" Velasquez was located—given that "[h]is counsel represents that [he] is in New Mexico while respondents contend that he is in Texas"—the court concluded that venue was proper in the District of Minnesota, Velasquez's district of arrest. App. 43, R. Doc. 9 at 3. On the merits, the court ruled that Velasquez "should be allowed the processes available under [8 U.S.C.] § 1226." App. 44, R. Doc. 9 at 2. The court thus ordered the government to return Velasquez to Minnesota and provide him a bond hearing. App. 46, R. Doc. 9 at 4. It also ordered the government to show cause

why the named defendants should not be held in contempt for violating the court's previous order to return Velasquez to the jurisdiction immediately. *Id.*[1]

Only after the district court threatened contempt did the government finally return Velasquez to Minnesota. App. 45-46, R. Doc. 9 at 3-4. In response to the district court's show-cause order, the government asserted that "the number of Petitioners needing to be returned to Minnesota caused the delay in transporting the Petitioner back" to the state. App. 45-46, R. Doc. 9 at 2.

Velasquez appeared for a bond hearing before an IJ in Minnesota on February 4 and was released on bond by order of the IJ the same day. Declaration of Kevin M. Lamb ("Lamb Decl."), Ex. 2. The government did not appeal the IJ order, which became final on March 6. *Id.*, Ex. 1.[2]

## SUMMARY OF ARGUMENT

I.      This appeal is moot because the government has fully and irrevocably complied with the district court's order. The district court ordered the government to return Velasquez to Minnesota and provide him with a hearing before an IJ. The

---

[1]     While this appeal was pending (and after Velasquez was released on bond), this Court held that § 1225(b)(2)(A), not § 1226, applies to all "alien[s] present in the United States" who have "not been admitted." *Avila v. Bondi*, 170 F.4th 1128, 1133-1134 (8th Cir. 2026), *reh'g denied* (June 17, 2026).

[2]     By separate motion, Velasquez has requested that the Court supplement the record with, and/or take judicial notice of, Exhibits 1 and 2 to undersigned counsel's declaration in support of that motion.

government did so, and Velasquez was released on bond. This Court cannot unwind those actions. Such "full compliance" "with the district court's order" renders the case "moot." *Barney v. United States*, 568 F.2d 116, 117 (8th Cir. 1978) (per curiam). There is no longer an issue on appeal "that can[] affect the rights of the litigants." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). For that reason, courts have repeatedly held that a petitioner's "release from detention moots his challenge to the legality of [that] detention" absent exceptional circumstances not present here. *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002); *accord Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). The government itself is pressing the same argument for dismissing its appeal before this Court in *Hoque v. Trump*, No. 25-2516 (8th Cir.).

II. The district court properly exercised jurisdiction. Although a habeas petition ordinarily should be filed in a detainee's district of confinement, that default rule does not apply when the government either (1) prevents a court from ascertaining the district of confinement or (2) manipulates a detainee's location to impede his access to habeas relief. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441-443, 450 n.18 (2004). Both exceptions apply here. The government transferred Velasquez multiple times, without informing his attorney. And before the district court, it argued that Velasquez should have filed his petition in an incorrect venue.

That conduct both frustrated the district court's ability to determine where Velasquez was confined and obstructed Velasquez's timely access to counsel. Moreover, the government took those actions in the context of an immigration enforcement operation characterized by chronic government misconduct that appears designed to hinder detainees' access to effective judicial relief. Given these circumstances, the district court permissibly exercised jurisdiction over Velasquez's habeas petition in his district of arrest.

III. If the Court concludes that the District of Minnesota was an improper venue, it should remand with instructions to transfer this case to the District of New Mexico. *See* 28 U.S.C. § 1406(a). At this point, the government does not dispute that it was holding Velasquez in New Mexico at the time he sought relief. So under the district-of-confinement rule, the District of New Mexico—not anywhere in Texas—would be the proper venue.

## STANDARD OF REVIEW

"When reviewing a district court's decision to grant a petition for the writ of habeas corpus," this Court "review[s] its legal conclusions de novo and its factual findings for clear error." *Jones v. Norman*, 633 F.3d 661, 665 (8th Cir. 2011). The Court "may affirm a judgment on any basis supported by the record." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000).

- 10 -

# ARGUMENT

## I. THIS APPEAL IS MOOT

The government's complete and irrevocable compliance with the district court's order renders this appeal moot. This Court "has a special obligation to consider its own jurisdiction," *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam), including to "address the question of mootness" on appeal, *United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (other quotation marks omitted). That occurs when an event takes place "while a case is pending on appeal" that "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992).

As this Court has long recognized, a party's "full compliance" with a court order is such an event that renders its appeal of that order moot. *Barney*, 568 F.2d at 117; *see also United States v. First National Bank of Sturgis*, 587 F.2d 909, 910 (8th Cir. 1978) (per curiam); *United States v. Olson*, 604 F.2d 29, 31 (8th Cir. 1979) (per curiam). Accordingly, "[a]s a general principle, once a party has complied with a court order or injunction, and has not been penalized or suffered

any prejudice that could be remedied on appeal, the appeal is moot." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995).  That principle applies so long as the complied-with order "was not a continuing injunction" but rather "required [the defendant] to perform certain discrete acts." *Newman v. Alabama*, 683 F.2d 1312, 1317 (11th Cir. 1982).  In that scenario, a decision by the court of appeals can "have no practical effect," and the appeal must be dismissed. *First National Bank*, 587 F.2d at 910.

Applying these principles, this appeal is moot.  The government has fully complied with the district court's order.  That order directed the government to (1) provide Velasquez a bond hearing within seven days, (2) release Velasquez if no bond hearing was held, (3) return Velasquez to Minnesota if it had not already done so, and (4) show cause why it should not be held in contempt for failing to comply with a previous order directing the government to return Velasquez to Minnesota.  App. 46, R. Doc. 9 at 4.  The court thus required only "discrete acts." *Newman*, 683 F.2d at 1317.  And the government performed them:  Velasquez has been released on bond in Minnesota, and the government has satisfied its show-cause obligation.  App. 48, 50, R. Doc. 12 at 1, 3; Lamb Decl. Ex. 2.

A decision from this Court will therefore "have no practical effect." *First National Bank*, 587 F.2d at 910.  As explained, Velasquez was released on bond following a separate hearing before an IJ, and the IJ's decision has become final.

Lamb Decl. Ex. 1 (noting order becomes final within 30 days if not appealed).  So

any attempt by the government to re-detain Velasquez will be governed by the

procedures set forth in the INA and its implementing regulations, not the district

court's order.  *See, e.g.*, *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 503

(S.D.N.Y. 2025) ("To properly redetain [a petitioner released on bond], an

immigration officer first would have had to exercise his or her discretion to revoke

[the] bond," and the petitioner would be entitled to "a series of procedural

protections set forth in applicable regulations.").  For that reason, courts have

repeatedly recognized that a petitioner's "release from detention moots his

challenge to the legality of [that] detention" absent other collateral consequences or

special circumstances not present here.  *Riley v. INS*, 310 F.3d 1253, 1257 (10th

Cir. 2002); *accord Abdala v. INS*, 488 F.3d 1061, 1064 (9th Cir. 2007); *Panosyan

v. Mayorkas,* 854 F. App'x 787, 788 (9th Cir. 2021) (dismissing habeas petition as

moot where "administratively final" IJ order prevented re-detention "absent

changed circumstances").

All of that is true regardless of what happens in this appeal.  Even if the

district court's judgment granting Velasquez habeas relief were vacated, the bond

order would remain in place, and further relief for the government would not run

through the district court.  Moreover, should the government ever re-detain

Velasquez, it would necessarily do so in Minnesota, which would be the proper

venue for immediate judicial review of that detention.  This appeal thus has "los[t]

[its] life because of … a change in circumstances."  *Ali v. Cangemi*, 419 F.3d 722,

723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir.

2000)).  Any discussion of "the merits" would accordingly "be merely advisory."

*In re Search Warrants*, 487 F.3d 1190, 1192 (8th Cir. 2007).

Indeed, the government has transparently sought an advisory opinion in this

case.  It moved to expedite this appeal on the ground that this Court should

"provide guidance" on a question relevant to other cases.  Mot. to Expedite 8 (Feb.

10, 2026).  And its opening brief likewise emphasizes the impact a decision here

would have on other cases.  *See* Br. i, 1.  This Court, however, adjudicates only

"actual and concrete disputes, the resolutions of which have direct consequences

for the parties involved."  *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71

(2013); *accord Preiser*, 422 U.S. at 401 (requiring a court to be able to issue relief

that would "affect the rights of the litigants").  Because no such dispute exists, the

Court should dismiss the appeal.

Finally, the government's own arguments in *Hoque v. Trump*, No. 25-2516

(8th Cir.), confirm this appeal is moot.  In *Hoque*, as in this case, the government

appealed a district court's grant of habeas relief to a noncitizen, and while the

appeal was pending, an IJ order granting release on bond became final—here,

when the government did not appeal the order and, in *Hoque*, when the BIA

affirmed it.  *See* Appellants' Mot. for Vacatur & Dismissal 6, No. 25-2516 (8th Cir. Dec. 8, 2025) (Mot.).  The government then moved to dismiss *Hoque* as moot. *Id.* at 2.  As the government there concedes, an IJ's intervening "decision granting release on bond, if not appealed by DHS, … constitutes an administratively final order" that "precludes DHS from re-detaining the alien."  Appellants' Reply in Support of Its Mot. 4, No. 25-2516 (8th Cir. Dec. 29, 2025).  And there is thus "no longer a live dispute."  *Id.* at 2.

Given its arguments for dismissal of *Hoque*, the government has no defensible basis for opposing dismissal of its appeal here.  By the government's own logic, the IJ's final order granting Velasquez's release on bond "renders it 'impossible' for this Court to grant 'any effectual relief whatever' to the Government [even] if it were to prevail on appeal."  Mot. 10.  This "appeal [is] consequently moot."  *Id.* (citing *Church of Scientology*, 506 U.S. at 12).

## II.  THE DISTRICT COURT PROPERLY EXERCISED JURISDICTION OVER VELASQUEZ'S HABEAS PETITION

If the Court reaches the venue issue, it should affirm the district court's exercise of jurisdiction.  The "default rule" that "habeas challenges to present physical confinement" should be filed in the petitioner's "district of confinement," *Padilla*, 542 U.S. at 435, 443, is subject to exceptions.  As relevant here, when the government either (1) prevents a court from ascertaining the district of confinement or (2) manipulates a detainee's location to impede habeas relief,

jurisdiction may lie in the district of the petitioner's arrest.  Both exceptions apply, supplying two independent grounds for affirmance.

### A.     The District-Of-Confinement Default Rule Is Not Absolute

Habeas corpus is "at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  While of course subject to rules, it is not and has never been "a static, narrow, [or] formalistic" device.  *Hensley v. Municipal Court, San Jose Milpitas Judicial District, Santa Clara County*, 411 U.S. 345, 349-350 (1973).  Rather, "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected."  *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

The district-of-confinement default rule derives from two related statutory provisions.  First, Congress has empowered district courts to issue "[w]rits of habeas corpus … within their respective jurisdictions."  28 U.S.C. § 2241(a).  And second, it has provided that the proper respondent to a habeas petition is "the person who has custody over" the petitioner.  *Id.* § 2242. The latter provision means habeas petitions ordinarily must name as a respondent "the warden of the facility where the prisoner is being held," *Padilla*, 542 U.S. at 435 (citing *Wales v. Whitney*, 114 U.S. 564, 574 (1885)), while the former requires "that the court issuing the writ have jurisdiction over th[at] custodian," *Braden v. 30th Judicial*

*Circuit Court of Kentucky*, 410 U.S. 484, 495 (1973).  Because "[b]y definition, the immediate custodian and the prisoner reside in the same district," a habeas petition usually must be filed in the petitioner's "district of confinement."  *Padilla*, 542 U.S. at 444, 447.

Although often referred to as "jurisdictional," these provisions do not go to "subject-matter jurisdiction."  *Padilla*, 542 U.S. at 434 n.7.  They are instead "best understood as" questions "of personal jurisdiction or venue."  *Id.* at 451 (Kennedy, J., concurring).  Hence, the district-of-confinement rule, like the immediate-custodian rule, is a "default" presumption, not an inexorable command.  *Id.* at 435 (majority opinion).  As the Supreme Court has recognized, the default rule has long been subject to exceptions, *see id.* at 436 n.9, 439, 441, 447 n.16, 450 n.18, which preserve the traditional power of habeas corpus "to cut through barriers of form and procedural mazes," thereby "safeguarding individual freedom against arbitrary and lawless state action," *Harris*, 394 U.S. at 291.  Two recognized exceptions to the default rule apply under the circumstances here.

**B.    The District-Of-Confinement Default Rule Does Not Apply Because The Government's Conduct Impeded The District Court's Ascertainment Of That District**

1.    When a court cannot ascertain a habeas petitioner's location, "it is impossible" for that court "to apply the … district of confinement rule[]."  *Padilla*, 542 U.S. at 450 n.18.  Yet "it is essential that petitioner[s] not be denied the right

to petition for a writ of habeas corpus." *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (Bork, J., in chambers); *accord Wolff v. McDonnell*, 418 U.S. 539, 578 (1974) ("[I]t is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed."). Thus, when a habeas petitioner's location is not "clear" to the court, *Padilla*, 542 U.S. at 450 n.18—for example, because "the Government was not forthcoming with respect to … the place of detention," *id*. at 454 (Kennedy, J., concurring)—the district-of-confinement rule does not apply. As explained by Justice Kennedy joined by Justice O'Connor, whose votes were essential to the *Padilla* majority, in such circumstances, "habeas jurisdiction would be in the district court from whose territory the petitioner had been removed." *Id*.

This exception accords with "longstanding [habeas] tradition." *Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). "[H]undreds of cases across many decades" demonstrate that "[a]t the center of" historical habeas "jurisprudence stood the idea that the court might inspect imprisonment orders made at any time, anywhere, by any authority." *Id*. (quoting Halliday, *Habeas Corpus: From England to Empire* 161 (2012 ed.)). It thus offends history and tradition to allow habeas relief to be impeded because a court is deprived of information about the challenged detention.

2.      The district court here—"from whose territory" Velasquez "had been removed," *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring)—properly exercised jurisdiction over his habeas petition because the government's conduct impeded the court from ascertaining his district of confinement.  Indeed, the government created pervasive confusion about Velasquez's location.  After arresting Velasquez in Minnesota, it removed him from the state without notifying his attorney, without affording him a phone call, and without updating the ICE Locator system.  Word eventually reached Velasquez's counsel that Velasquez was in El Paso, Texas, but the government transferred him again before she could reach him.  Only later did she discover that he was, apparently, in Torrance County, New Mexico.  Matters only got worse after Velasquez sought judicial review:  The government insisted that Velasquez had been in Texas for "weeks" and was being held at the Port Isabel Processing Center in the Southern District of Texas.  App. 27, 29, R. Doc. 7 at 5, 7.  But as far as Velasquez's counsel was aware, Velasquez had never been transferred to that location.  As Velasquez explained in his habeas petition, it was not even clear the government knew *who* he was, much less *where* he was.  App. 3, R. Doc. 1 ¶ 6.  Faced with this bewildering record, the district court did not commit "clear error," *Jones*, 633 F.3d at 665, when it found that "[t]here is confusion as to where [Velasquez] is located" and deemed venue proper in the district of arrest, App. 45, R. Doc. 9 at 3.

Although the government now contends that the district court committed a basic error in an easy case, its brief underscores the tangle the district court confronted.  The government acknowledges that "Velasquez was arrested in Minnesota on January 6" and that "[b]y January 7" he "had been transferred to Texas."  Br. 5.  But specific dates then conspicuously drop out from its discussion.  The government asserts (contrary to its position below) that Velasquez was "later transferred to New Mexico," but it does not say when.  Br. 7-8.  And nowhere does the government aver that Velasquez was ever transferred back to Texas, a tacit admission that its representations to the district court about Velasquez's detention in Texas were incorrect.

The government's own failure to tell this Court which district it believes the case should have been transferred to is telling.  The government's brief may be read to indirectly suggest that the proper venue was El Paso, in the Western District of Texas.  Br. 14.  But before the district court, the government argued that Velasquez was at Port Isabel—nearly 1,000 miles away in the Southern District of Texas.  App. 27, R. Doc. 7 at 5.

Nor does the government explain why the proper district was not the District of New Mexico, where the government now all but concedes Velasquez was held at the time he filed his petition.  Br. 5-6.  And to the extent the government contends that Velasquez should have filed in El Paso notwithstanding his detention

in Torrance County, New Mexico, it has argued precisely the opposite in analogous habeas litigation. *E.g.*, *Egbele v. Bondi*, 2026 WL 458242, at \*2 (D. Minn. Feb. 18, 2026) ("[T]he government contends this case should be dismissed or transferred to New Mexico" because "petitioner had been booked into the Torrance County Detention Center"); *Carlos D. v. Bondi*, 2026 WL 636685, at \*2 (D. Minn. Mar. 6, 2026) (government argued that venue lay in New Mexico because petitioner was held in "Torrance/Estancia New Mexico"). Given that the government's own understanding of the proper jurisdiction is inscrutable even on appeal, its claim the district court erred rings hollow.

*     *     *

In short, this Court need not break new ground to affirm. As explained, precedent, history, and tradition counsel that the district-of-confinement rule does not apply and that venue for purposes of a habeas petition is proper in the district of arrest when the government impedes a court's ascertainment of where the petitioner is located. That is precisely what happened here. At every turn, the government has been unforthcoming or mistaken about where it was detaining Velasquez. Consistent with the "fundamental" principle that habeas petitioners' "access … to the courts … may not be denied or obstructed," *Wolff*, 418 U.S. at 578, the district court properly exercised jurisdiction in the district of Velasquez's arrest.

**C. The District-Of-Confinement Default Rule Does Not Apply Because The Government Manipulated Velasquez's Location To Impede His Access To Habeas Relief**

1. When it applied the immediate-custodian default rule in *Padilla*, the Supreme Court emphasized that there was "no indication" of "any attempt to manipulate behind Padilla's transfer" or effort by the government "to hide from Padilla's lawyer where it had taken him." 542 U.S. at 441. The Court recognized that any such efforts "would provide an arguable basis for a departure" from the default rule. *Id.* at 442. Justice Kennedy likewise opined that the default must give way "if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention," and that in such circumstances "habeas jurisdiction" lies "in the district court from whose territory the petitioner had been removed." *Id.* at 454 (Kennedy, J., concurring). Other courts, both before and after *Padilla*, have recognized the same exception. *See, e.g.*, *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000) (default rules may not apply when "the INS spirited an alien from one site to another in an attempt to manipulate jurisdiction"); *Suri v. Trump*, 2025 WL 1806692, at *6 n.6 (4th Cir. July 1, 2025) (jurisdiction was proper in the district of arrest because the

government removed petitioner from that district "to make it difficult for Petitioner's counsel to file the petition").

2. The government's conduct in this case triggers this exception because it reflects an effort to manipulate jurisdiction and thereby thwart Velasquez's access to habeas relief. As explained, after arresting Velasquez, the government removed him from Minnesota without notifying his counsel or providing him an opportunity to do so. App. 3, R. Doc. 1 ¶¶ 8-9. When his attorney finally tracked him down in El Paso, the government transferred him to New Mexico—again without notice or explanation, and even though the government knew Velasquez's attorney was attempting to contact him at the El Paso detention facility. App. 3, R. Doc. 1 ¶ 9. Then, when Velasquez's counsel sought judicial review of his confinement, the government argued that venue lay not in New Mexico but rather in the Southern District of Texas, even though it appears Velasquez was never in that jurisdiction. App. 27, R. Doc. 7 at 5. Worse, the government failed to timely return Velasquez to Minnesota in response to a court order and complied only after the district court threatened to hold the government in contempt. App. 45-46, R. Doc. 9 at 3-4. Those maneuvers stymied Velasquez's ability to obtain judicial review, as evidenced by the 17-day gap between his arrest and the filing of his petition. App. 2, R. Doc. 1 ¶ 4.

If the government had gotten its way, it is unclear when, if ever, Velasquez would have received a hearing on the merits of his detention. Had the government's arguments prevailed below, the district court would have transferred Velasquez's petition to the Southern District of Texas. At that point, the government may well have continued to argue that venue remained improper, because it turned out that Velasquez was not actually confined in that district when his petition was filed. Unfortunately, the risk of an extended chain of transfers and frustrated habeas petitions is not far-fetched. In *Anariba v. Director Hudson County Correctional Center*, 17 F.4th 434, 436 (3d Cir. 2021), for example, an immigration detainee seeking habeas relief was transferred several times over a number of years. Ruling for the petitioner, the Third Circuit explained that "forum-shopping" concerns like those implicated here are elevated "when the [habeas] petitioner is an ICE detainee" because "the Government could transfer a petitioner with such consistency as to evade a district court ever even obtaining jurisdiction over a petitioner's [habeas] claims." *Id.* at 447-448.

The district court prevented that outcome here, but the circumstances surrounding Velasquez's transfers across multiple state lines obviously frustrated his access to judicial review. Furthermore, the government has failed to provide a coherent explanation for its actions: As discussed below, *infra* pp. 29-31, its proffered justifications for removing Velasquez from Minnesota do not add up.

And the government has given *no* explanation for Velasquez's subsequent transfer to New Mexico—just as it has given no explanation for holding Velasquez incommunicado for two days, canceling his scheduled call with his attorney, or representing that he had been held in Texas for weeks when that was not true. All of that suggests that the intent was at least in part to obstruct the availability of habeas relief. At a minimum, there can be no question that "the Government was not forthcoming with respect to … the place of detention." *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring); *see supra* pp. 19-21. Indeed, even now, the government declines to identify that location.

The context surrounding Velasquez's ordeal reinforces this understanding of the government's conduct. During Operation Metro Surge, the immigration-enforcement operation during which Velasquez was arrested, the government habitually violated court orders. Chief Judge Schiltz of the District of Minnesota identified over 200 such violations across 143 recent cases during the same period as Velasquez's case. *Juan T.R. v. Noem*, 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026). And many of those violations stem from the precise issue here: the government's transfer of detainees out of their district of arrest in a manner that threatened to thwart judicial review. For example, in *Fernando T. v. Noem*, 821 F. Supp. 3d 975, 977-980 (D. Minn. 2026), the court held the government in civil contempt after it arrested an immigrant, transferred him out of Minnesota in

violation of the court's injunction, and then released him in Texas in violation of a separate order requiring his return to the state. In *Lida E.G.Q. v. Bondi*, the government transferred a habeas petitioner to Texas after the court had enjoined it from removing her from Minnesota. Order 3, No. 26-cv-138 (D. Minn. Jan. 14, 2026), Dkt. 9. And in *Manolo Z. L. v. Trump*, the government removed the petitioner to Texas with no notice to the court, violating an order to provide the court 72 hours' notice before transferring the petitioner out of Minnesota. Order 3, No. 26-cv-316 (D. Minn. Feb. 2, 2026), Dkt. 13. Similar incidents are legion. *See Juan T.R.*, 2026 WL 555601, at *3-25 (collecting cases).

Indeed, one district court in Minnesota entered emergency injunctive relief against the government to restrain "policies and practices" that the court concluded "all but extinguish a detainee's access to counsel." *Advocates for Human Rights v. DHS*, 820 F. Supp. 3d 789, 795 (D. Minn. 2026), *appeal docketed*, No. 26-2064 (8th Cir.). That court's findings aptly describe what happened to Velasquez: "Detainees are moved frequently, quickly, without notice, and often with no way for attorneys to know where or how long they will be at a given facility." *Id.* Even worse, the government "transfer[s] people so quickly that even [it] struggle[s] to locate detainees." *Id.* at 796. In the court's assessment, such measures "make it difficult—if not impossible—for attorneys to effectively represent their clients."

*Id.* at 797. This pattern of misconduct strongly suggests that the government's actions in this case were taken for the purpose of avoiding judicial review.

The experience in Minnesota is not unique. In recent months, the government has arrested noncitizens nationwide and moved them between detention centers, often in violation of court orders, impeding access to judicial review. *E.g.*, *Ozturk*, 136 F.4th at 387 (ICE arrested petitioner in Massachusetts, drove her to Vermont, and left counsel "[u]naware of her location and unable to contact their client," disclosing her location only after "she had again been moved, this time to a correctional facility in Louisiana"); *Khalil v. President, United States*, 164 F.4th 259, 266 (3d Cir. 2026) (individual arrested in New York, moved to New Jersey, then transported to Louisiana, only after which did "the government inform[] one of [petitioner's] attorneys of the transfer"); *Suri*, 2025 WL 1806692, at *1-3 (ICE transported individual to Texas while twice misinforming him of where he was being detained for the express purpose of forum-shopping and impeding habeas relief).

These "widespread and recent violations of locally-issued no-transfer orders" are why the District of New Jersey recently took to requiring the government to file a preemptive declaration acknowledging the court's orders "in all … immigration-habeas cases." *Kumar v. Soto*, 822 F. Supp. 3d 450, 461-462 (D.N.J. 2026); *see also id.* at 454 (noting that ICE moved the petitioner from his

district of arrest to Texas in violation of a court order).  The Supreme Court, for its part, had to take the extraordinary step of enjoining the government from spiriting detainees held in Texas out of the country in the middle of the night without "sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief."  *AARP v. Trump*, 605 U.S. 91, 92-93, 95 (2025) (per curiam).  The Court's intervention at "12:52 a.m. eastern time" stopped the government from delivering these detainees into "the custody of a foreign sovereign" after providing "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal."  *Id.* at 93, 95.

The Fourth Circuit recently applied *Padilla*'s manipulation exception in circumstances mirroring those here.  In *Suri*, as in this case, the petitioner was arrested in one state and transported to another before he could contact counsel.  2025 WL 1806692, at *1-3.  There, as here, after the petitioner was permitted to tell his spouse his location, the government moved him to yet another state.  *Id.*  And there, as here, the government misidentified the petitioner's district of confinement.  *Id.*  On those facts, the Fourth Circuit held that the habeas petition was properly filed in the district of arrest, concluding that the government's conduct was designed "to make it difficult for Petitioner's counsel to file the

petition and to transfer him to the Government's chosen forum." *Id.* This Court should hold likewise here.

3. The government claims that resource scarcity—not forum manipulation or any effort to evade judicial review—explains its behavior. According to the government, Minnesota lacks bed space adequate for immigrant detainees, requiring ICE to rely on out-of-state detention facilities. Br. 4-5. That explanation fails several times over.

To start, the government never raised a lack of bedspace in the district court, let alone justified Velasquez's transfer on that ground. Any such argument is accordingly forfeited. Indeed, this Court's rule against considering issues "not raised in the district court … is ironclad when it comes to reversals of the district court." *Johnson v. City of Minneapolis*, 901 F.3d 963, 970-972 (8th Cir. 2018).

In any event, as the Fourth Circuit concluded in *Suri*, the government's resource-scarcity argument is unsupported. 2025 WL 1806692, at *3. The government cites a spreadsheet of ICE detention statistics cataloguing the average daily detained population (and their average length of detention) at individual ICE facilities for the fiscal year. Br. 4. But the spreadsheet contains no data specific to the period of Velasquez's detention nor any information regarding the capacity of any detention facility, making it impossible to discern whether Minnesota

detention facilities were full during the relevant period or whether the El Paso or

Port Isabel facility had more free space.

The government also cites a district-court decision acknowledging the

government's assertion in that case of a lack of bed space. *See* Br. 4 (citing

*Adriana M.Y.M. v. Easterwood*, 2026 WL 184721, at *2 (D. Minn. Jan. 24, 2026)).

But the court in *Adriana* did not credit the government's assertion; to the contrary,

the court chastised the government for engaging in conduct that "risk[ed] defeating

timely judicial review." 2026 WL 184721, at *3; *see also id*. (noting lack of any

evidence government "disclosed Petitioner's transfer in advance, allowed for

communication with counsel, or otherwise conveyed Petitioner's whereabouts at

the time of filing"). Furthermore, the government's resource-scarcity argument is

undermined by publicly available evidence suggesting that Texas is itself

overwhelmed with immigrant detainees. *See* Findell & Hackman, *How ICE's*

*Largest Detention Facility Unraveled*, Wall St. J. (Mar. 13, 2026); Nguyen &

Keemahill, *147 Measles Cases Reported In Texas So Far This Year, Most Of Them*

*In Federal Detention Centers*, San Antonio Current (Mar. 19, 2026); Burke et al.,

*Takeaways From AP's Report On The ICE Detention Center Holding Children*

*And Parents*, Associated Press (Feb. 28, 2026).

Finally, the government's resource-scarcity rationale ignores the constraints

on judicial and prosecutorial resources. Due in large part to the government's

practice of transferring detainees to Texas, the district courts there are more inundated with habeas petitions than any other district in the country. *See* Talbot et al., *Tracking Habeas Cases*, ProPublica (visited July 6, 2026). Between January 2025 and the end of March 2026, 3,542 habeas cases were filed in the Western District of Texas; in a district of 13 active judges and five senior judges, that averages to approximately 197 cases per judge. *Id.*; U.S. District Court Western District of Texas, *Judges' Directory & Biographies* (visited July 6, 2026). In the District of Minnesota, by contrast, 1,247 habeas cases were filed before seven active judges and six senior judges—totaling roughly 96 cases per judge. Talbot et al., *supra*; U.S. District Court District of Minnesota, *Judges* (visited July 6, 2026). The government, which had been amassing detainees in Texas, was surely aware of this, suggesting that something other than a desire to avoid taxing resources motivated its decision to transfer Velasquez. The most natural inference is the one the Fourth Circuit drew in *Suri* on materially similar facts: The government's conduct was designed "to make it difficult for [his] counsel to file the petition and to transfer him to the Government's chosen forum," 2025 WL 1806692, at *9.

## III. IF THE DISTRICT OF MINNESOTA WAS AN IMPROPER VENUE, THE CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF NEW MEXICO

If the Court reaches the venue question and concludes that the district-of-confinement rule applies, it should vacate the district court's judgment and remand with instructions to transfer the case to the District of New Mexico.

When a case is filed "in the wrong … district," the court "shall[,] … if it be in the interest of justice, transfer such case to any district … in which it could have been brought." 28 U.S.C. § 1406(a). Consistent with that statutory directive, courts have transferred habeas cases filed in the wrong venue to the proper one. *See, e.g.*, *Gherebi v. Bush*, 374 F.3d 727, 739 (9th Cir. 2004); *Diaz v. United States*, 580 F. App'x 716, 717 (11th Cir. 2014) (per curiam); *Shaw v. United States*, 417 F. App'x 311, 312 (4th Cir. 2011) (per curiam). That includes an analogous habeas case originally filed in the District of Minnesota. *Marcia R.Q. v. Bondi*, 2026 WL 296502, at *1 (D. Minn. Feb. 4, 2026).

The proper transferee district in this case would be the District of New Mexico. Although the government told the district court it was holding Velasquez in the Southern District of Texas at the time he filed his habeas petition, it no longer appears to dispute that he was in fact detained at that time in Torrance County, New Mexico. Br. 5. The District of New Mexico was therefore Velasquez's district of confinement and, if *Padilla*'s default rule applies, the proper venue for his habeas petition. 542 U.S. at 443. Indeed, the District of New Mexico frequently adjudicates habeas challenges to detention at the Torrance County facility. *E.g.*, *Singh v. Carnes*, 2026 WL 599138 (D.N.M. Mar. 3, 2026); *Olivera v. Dedos*, 2026 WL 622669 (D.N.M. Mar. 5, 2026); *Melchor-Rios v. Ortiz*, 2025 WL 3764775 (D.N.M. Dec. 30, 2025); *Singh v. Bondi*, 2026 WL 525094

(D.N.M. Feb. 25, 2026).  As noted, the government itself has argued in other cases that New Mexico is the proper venue for such petitions.  *E.g.*, *Egbele*, 2026 WL 458242, at *2; *Carlos D.*, 2026 WL 636685, at *2.

This is so even though the official responsible for the Torrance County detention facility—and thus the proper respondent under *Padilla*'s default rule—is the Director of the ICE Field Office in El Paso, Texas.  *See* ICE, *El Paso Field Office* (stating that the El Paso field office is responsible for "New Mexico") (visited July 6, 2026).  As explained, the statute authorizing district courts to issue habeas writs "'within their respective jurisdictions'" requires "nothing more than that the court issuing the writ have jurisdiction over the custodian."  *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)).  And the official in charge of a detention facility in the District of New Mexico is subject to jurisdiction in that district in cases arising out of his responsibility for that facility.  Any other result would have troubling implications:  The government could, for example, locate a single official in its preferred district and place her in charge of all detention facilities nationwide, thereby dictating the venue for all habeas litigation.

Moreover, the government has forfeited any contrary argument.  The immediate-custodian and district-of-confinement rules are distinct, *see id*. at 435, 443, and the government's appeal challenges only the district court's application of the latter.  It has never argued—below or on appeal—that the El Paso Field Office

Director is not a proper respondent under the immediate-custodian rule or that he is not subject to suit in the District of New Mexico for habeas claims arising out of his supervisory authority over the Torrance County facility.  Any such argument made for the first time in the government's reply brief would come too late.  *See* Fed. R. Civ. P. 12(h)(1)(B); *United States v. Cooper*, 990 F.3d 576, 583 (8th Cir. 2021).  Accordingly, if no *Padilla* exception applies, the proper venue for Velasquez's habeas challenge is the District of New Mexico, where Velasquez was held and which has jurisdiction over the relevant respondent.

The Southern District of Texas plainly is not a proper venue.  There is no evidence that Velasquez has ever been held in that district, let alone that it was his place of confinement at the time he sought habeas relief.  Nor has the government ever contested that the proper respondent for Velasquez's habeas petition is the El Paso Field Office Director.  That official neither resides in the Southern District of Texas nor exercises jurisdiction over any detention facility in that district.  As explained, he sits all the way across the state and exercises jurisdiction over detention facilities in the Western District of Texas and New Mexico.

Finally, transfer, rather than dismissal, would be "in the interest of justice," 28 U.S.C. § 1406(a).  "The language of § 1406(a) is amply broad … to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).  The transfer

provision is intended to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits," "in order that the plaintiff not be penalized by … 'time-consuming and justice-defeating technicalities.'" *Id*. at 466-467. This "enlightened congressional objective," *id*. at 467, is especially apt in the habeas context, which, as noted, "demands that [the writ] be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected," *Harris*, 394 U.S. at 291. Dismissal would replace that flexibility with rigid formalism and impose needless delay by forcing Velasquez to refile his petition. Even if the Court concludes that venue was improper in the District of Minnesota, Velasquez can hardly be blamed for filing there given the government's extraordinary conduct in this case. Transfer would avoid rewarding such conduct and ensure that Velasquez can pursue his challenge in the proper forum without further delay.

## CONCLUSION

The Court should dismiss this appeal as moot. If the Court concludes that the appeal is not moot, it should affirm the district court's judgment or, if it concludes that venue was improper, order the case transferred to the District of New Mexico.

Respectfully submitted.

/s/ Kevin M. Lamb

LYNDSEY MARCELINO SCHALKWYK
JI HAE KIM
MARCELINO & KIM PC
400 South 4th Street, Suite 410
PMB 504349
Minneapolis, MN 55415
(858) 337-0956

KEVIN M. LAMB
JOSEPH M. MEYER
MATTHEW E. MORRIS
ANDREW NELL
JANE E. RECKER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

July 13, 2026

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 8,617 words, excluding the portions exempted by Rule 32(f).

The brief complies with the typeface and typestyle requirements of Rules 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in Times New Roman 14-point font.

The brief complies with the electronic-filing requirement of Circuit Rule 28A(h)(2) because it was scanned for viruses and no virus was detected.

/s/ Kevin M. Lamb
KEVIN M. LAMB

July 13, 2026

## CERTIFICATE OF SERVICE

On July 13, 2026, I electronically filed the foregoing with the Court using the CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by that system.

/s/ Kevin M. Lamb
KEVIN M. LAMB